

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

**TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET**



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 26, 2009**                                          **United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| KNIGHT ENERGY CORP., | § | Case No. 09-32163-11 |
| | § | |
| CHARLES HILL DRILLING, INC., | § | Case No. 09-32165-11 |
| | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 09-32163-11 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON MOTION TO LIFT THE AUTOMATIC STAY
AND MOTION TO PROHIBIT USE OF CASH COLLATERAL
AND MOTION TO USE CASH COLLATERAL**

On June 23, 2009, a hearing was held on the Debtors' Emergency Motion to Authorize

Debtors' to Use Cash Collateral filed on April 9, 2009 (the "Debtors' Motion"), HD Special-

Situations, LP ("HD") Motion to Lift the Automatic Stay (the "Lift Stay Motion"), and HD's

Motion to Prohibit Use of Cash Collateral ("HD's Cash Collateral Motion"). Pursuant to the

Court's oral ruling on June 24, 2009, and having considered the pleadings, evidence, and

arguments of counsel, the Court makes the following findings of fact and conclusions of law as

required by FED. R. BANK. P. 7052 made applicable by FED. R. BANK. P. 9014. The Court reserves the right to amend or supplement these findings and conclusions.

**THE COURT FINDS THAT:**

A.     The Court has jurisdiction over these proceedings, and over the property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

B.     The Debtors filed their Chapter 11 bankruptcy cases on April 6, 2009 (the "Petition Date"). Thus, the Debtors have been in bankruptcy for approximately two-and-one-half months.

C.     The Debtor Charles Hill Drilling, Inc. ("CHD") is in the business of acquiring oil and gas leases and exploration and production with regard to such properties. CHD is the owner and operator of various oil and gas leases and wells in Eastland and Stephens Counties, Texas. CHD currently is operating nine wells.

D.     Knight Energy Corp. ("Knight") is the sole shareholder of CHD and is a publicly traded company. Knight and CHD were formed in 2006. The oil and gas properties of Charles Hill Drilling that are the subject of HD's Lift Stay Motion will hereinafter be referred to as the "Properties."

E.     In addition to the Properties, CHD owns certain rigs and other equipment that are available or used for drilling operations (the "Equipment").

F.     The Debtors have never made a profit since their formation. The Debtors' Chief Executive Officer testified that the Debtors had a loss of $3.5 million in 2007 and a net loss of $4.4 million in 2008. The Debtors' most recent monthly operating report ("MOR") shows that the Debtors had approximately $9,000.00 in cash at the end of May 2009. The Debtors' MORs

show that their revenues have gone up slightly in the past couple of months.  The Debtors are projecting approximately $2,000.00 of net operating income for the period July 2009 through September 2009.  The Debtors do not accrue or set aside estimated property taxes in their budgets.  65% of the Debtors' revenue comes from gas production and 35% comes from oil production.

G.    HD is the Debtors' secured lender with a lien in virtually all of the Debtors' assets.   The parties have stipulated for purposes of this contested matter that HD has a claim of $4,479,196.01 secured by a first priority lien in the Debtors' assets.

H.    The Debtors did not pay their property taxes on the Properties in 2008 and also did not pay all of their payroll taxes prepetition—having an estimated $250,000 owing in prepetition payroll taxes, according to their Chief Financial Officer. The Debtors also have approximately $700,000-$800,000 of unsecured prepetition debt.

I.     HD argues that the Debtors have no equity in their Properties and Equipment and the assets are not necessary to an effective reorganization.  Therefore, the Court should grant HD relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code.

J.    HD also argues that there is "cause" to lift the stay with respect to the Properties and Equipment, in that HD is not adequately protected, as set forth in section 362(d)(1) of the Bankruptcy Code.  Specifically, HD argues that the cash flows from the Properties are insufficient to make anything close to debt service on the HD debt.  The Debtors even admit that they anticipate having no funds to make any cash adequate protection payments in the next couple of months.  Moreover, as earlier noted, the Debtors have not even been able to make property tax payments on their property—allowing tax liens to accrue on the property which would prime the liens of HD.

K. The Debtors have no funds at this juncture to make capital expenditures to develop some of their nonproducing properties. The Debtors' Equipment is mostly old or "legacy" equipment and is lying in pastures not being utilized. The Debtors admit that significant expenditures would be needed to get the equipment operational. The Debtors acknowledge that there is a surplus of similar equipment in the market place and there are not many private party sales of this kind of equipment because of the depressed oil and gas drilling market place. For all these reasons and more, HD argues it is not adequately protected.

L. Pursuant to Bankruptcy Code section 362(g), HD has the burden of proof on the issue of the Debtor's equity in the Properties. The Debtor has the burden of proof on all other issues—such as whether the Properties are necessary to an effective reorganization (which case law tells us means an effective reorganization that is reasonably in prospect) as well as on the issue of whether it is adequately protecting HD.

A. **Equity in the Property**

M. With respect to whether HD has met its burden of proving the Debtor has no equity in the Properties, the Court finds as follows.

N. With respect to the easier issue of the Equipment, the Court finds the testimony and report of Guinn Henderson to be credible and the most compelling evidence of value of the Equipment and his conclusion of the gross fair market value of these assets was $1,155,246.00. The Court finds this to be the value of the Equipment. The valuation and investigation process on the Equipment appeared to be reasonable. The valuation seems to be credible because of the fact that the Equipment is older and most of the rigs have not been used in many months (only one mobile rig is currently operating). The marketplace would value the Equipment that is being operated as more valuable than idle equipment. The appearance of the Equipment was rusty and

worn in many places; much of the pipe was orange-banded; and the Debtors' own testimony was that $150,000.00 or more (up to $250,000.00 according to Charles Hill) of capital would have to be invested to make certain of its rigs ready to operate. Also, even the Debtors admit that this type of equipment drifts downward in value when the price of oil and gas has drifted downward such as it has the past year.

O.     With respect to the harder issue of valuation of the Properties, the Court is faced with competing experts, both of whom seemed very knowledgeable in their fields. HD's expert opined that the fair market value of the Debtors' Properties is $2,450,000 as of June 1, 2009 using what seemed like credible methodologies. The Debtors' expert comes up with a $2.4979 million value for the Debtors' proven, developed and producing ("PDP") properties alone.

P.     A big bone of contention is how to fairly value the Debtors' nonproven reserves, as well as the Debtors' proven but not producing, and proven undeveloped properties. The Debtors' expert suggests that there is significant additional value in those categories--potentially $5.960 million of overall value from these and the PDP properties. But it would appear from his report that well over $3 million of capital would need to be expended to achieve some of this value, and the Debtors' expert report also assumes a present value discount factor of 10% when computing the value of these nonproven reserves, and the credible testimony was that the market would expect a higher present value discount rate to be used for the nonproven reserves, throwing the Debtors' expert's ultimate valuation into question. Moreover, all acknowledge that the great uncertainty regarding the future price of oil and gas hugely impacts the value of the Debtors' assets.

Q.     All this considered, the Court does not find a specific value for the Debtors' Properties and thus, is not specifically, finding there is no equity. The Court merely finds that

HOU:2935893.1

the totality of the evidence does not suggest that there is anywhere close to a 20% equity cushion for HD at this juncture of the case.

R.      Using $4,479,196.01 as the value of HD's claim, the Debtors' Equipment and Properties would have to have a value of $5,375,035.21 for HD to have a 20% equity cushion. Since the Court has found that the Equipment has a fair market value of $1,155,246.00, this means the Properties would have to have a value of $4,219,789.21.  The Court, based on the totality of the evidence, does not find the Properties have this level of value at this time.  Again, the Court is not finding a precise value of the Properties at this time.  The Court believes it would be futile, since it would not be binding at the confirmation hearing, pursuant to Section 506(a), and since there could be a dramatic change in oil and gas prices between now and the confirmation hearing that could greatly impact value.

S.      The Court is merely finding that the totality of the evidence does not suggest a value of the Properties as high as $4,219,789.21 at this time, so HD is not adequately protected with a significant equity cushion.

T.      Turning to the other prongs of section 362(d) to determine if there is cause to grant relief from the stay, the Court is willing to give the Debtor the benefit of the doubt that there could be an effective reorganization in prospect.  While the Debtors did not produce anything in writing substantiating Mr. Bosso's testimony that he has commitments for investor funding for a plan of reorganization, it is still early in the case and we are in a business environment where capital markets have been frozen, but may be thawing.  The Court does not find that there is no reorganization in prospect, but the Debtors will have to "show me the money" at a disclosure statement hearing or else this finding will be different in early August.

HOU:2935893.1

U.    With respect to section 362(d)(1) and looking at whether there is cause to lift the stay due to a lack of adequate protect to HD, the Court finds that the Debtors have not met their burden to show adequate protection.  As stated above, the Debtors have never made a profit, have not paid property taxes, have not paid significant payroll taxes, and cannot come close to making debt service to HD.  The Debtors have a few thousand dollars in the bank.

V.    The Debtors have Equipment lying in pastures rusting with no capital to make it operational, and no capital in the company to otherwise develop prospects.  At the very least the Equipment can reasonably be construed to be declining in value.  But the Properties, while they lie undeveloped with lease terms running, are also reasonably construed to be declining in value.  Thus, HD is entitled to have relief from the stay UNLESS the cash adequate protection payments described below are made.

**B.    Cash Collateral**

W.    The Court finds that the evidence was that the Debtors' Exhibit 1 items are reasonable usages of cash and HD will be adequately protected as long as it is protected with the previous provisions that were in previous orders of the Court and the $40,000.00 payments described below.

X.    The next hearing on the use of cash collateral shall coincide with the disclosure statement hearing.

Y.    To the extent any findings of fact are or include conclusions of law, they shall be deemed to be conclusions of law.

On the basis of and consistent with the foregoing findings,

**THE COURT HEREBY ORDERS THAT:**

HOU:2935893.1

1.    The automatic stay will be modified to allow HD to post the Debtors' Properties in Eastland and Stephens Counties for a foreclosure sale, and for HD to otherwise exercise its state law remedies with respect to its collateral, **UNLESS** the Debtors meet the following conditions under the following time frames, which the court finds are necessary to provide adequate protection to HD:

a.    The Debtors must make a $40,000.00 cash adequate protection payment to HD by 5:00 pm central time, Wednesday July 1, 2009; the payment shall be made in cash or cash equivalent funds (wired funds, certified check or cashiers check)—from whatever source.  The Court realizes that the Debtors do not have sufficient cash according to the evidence.  But the Debtors must find an investor or shareholder or someone else who is willing to take the risk on this company.  The Court will not approve a DIP loan for this payment.  If such payment is not received by 5:00 pm Wednesday, July 1 by HD's counsel, David A. Zdunkewicz, at his office, Andrews Kurth LLP, 600 Travis, Suite 4200, Houston, Texas   77002, the automatic stay will terminate.  In such event, HD's counsel shall upload a notice on the Court's PACER docket so-indicating that the adequate protection payment was not received.

b.    If the Debtors make the July 1, 2009, adequate protection payment, the automatic stay will remain in place.  However, the automatic stay will terminate on August 6, 2009, if the Debtors do not file a disclosure statement and plan by August 6, 2009, providing for a significant cash infusion and a credible commitment for such cash infusion.  In other words, an exhibit must be attached to the Disclosure Statement that is a credible letter of commitment, signed by parties with the

-7-

financial wherewithal who are doing the committing. The Debtors shall obtain a hearing on their disclosure statement by no later than Tuesday, September 8, 2009.

c. In addition, the Debtors must make an additional $40,000.00 cash adequate protection payment to HD by 5:00 pm central time, Thursday, August 6, 2009; the payment shall be made in cash or cash equivalent funds (wired funds, certified check or cashiers check)—from whatever source. Such payment shall be made to HD's counsel, David A. Zdunkewicz, at his office, Andrews Kurth LLP, 600 Travis, Suite 4200, Houston, Texas 77002. If either the additional $40,000.00 adequate protection payment is not received by HD on AUGUST 6, 2009, **or** the disclosure statement and plan, as described above, is not filed, the stay will automatically lift in favor of HD on midnight, August 6, 2009. If the payment is not made to HD by the deadline, HD's counsel shall upload a notice on the Court's PACER docket so-indicating that the adequate protection payment was not received.

d. The court will further continue the hearing on HD's Lift Stay Motion to the hearing on the disclosure statement–if such hearing occurs and assuming the Debtors meet the requirements in this Order. The Court is anticipating that on or before September 8, 2009, there will be both a disclosure statement hearing and a continued hearing on HD's Lift Stay Motion. If the Court does not approve the Debtors' disclosure statement and/or does not find that there is a credible firm commitment to infuse cash into the Debtors that might create the prospect of a feasible and confirmable plan, the Court will entertain supplemental evidence

HOU:2935893.1

and/or argument in support of HD's Lift Stay Motion at the conclusion of the disclosure statement hearing, and the Court will consider lifting the stay at that time, in favor of HD.  In addition, the Court will decide at that hearing, whether additional adequate protection payments to HD are appropriate at that time, pending confirmation.  The Court is not requiring a third $40,000.00 cash payment in early September to HD at this juncture.  The Court will conduct the disclosure statement hearing—assuming it occurs, and reassess the issue of adequate protection at that time.  The Court understands that we are in an ever-changing market place and by the end of the summer, things may look better or worse or the same for this company and the industry.  The Court will consider the possibility of more, less or the same adequate protection payments going forward to HD at that early September hearing, depending on all the facts and circumstances.

e.      In summary, the Court is giving the Debtors a chance to keep their cases going at least thru the exclusivity period, as the Debtors asked.  But it comes with a price. The Court believes the evidence shows that HD is not sufficiently adequately protected in this case.  The Debtors are required to pay HD the adequate protection payments set forth in this Order to keep these cases alive into the Fall.

f.      Nothing in this Order should be construed to be any kind of indication of what the Court thinks is a fair payment to HD if there should be a restructuring of its debt under a Plan.  The Court notes that a $40,000.00 monthly payment is approximately a 10% per annum interest payment. The Court notes that the contractual interest due to HD under the loan documents is 15%.  And a market

-9-

rate of interest required by section 1129 of the Bankruptcy Code might be something entirely different than either 10% or 15%. The Court is leaving that to the parties to negotiate at this time, and the Court will determine the appropriate rate if necessary. The Court notes that it has written an opinion, *In re Northwest Timberline Ent, Inc.,* 348 B.R. 412 (Bankr. N.D. Tex. 2006), on what is an appropriate interest rate under section 1129 and this Court's view is that the risk profile of the Debtors is highly significant. The Court notes the situation is fluid, and the appropriate interest rate will be highly affected, at any hypothetical confirmation hearing, by whether there is a real cash infusion—whether that be an exit loan (that takes out some or all of HD's claims) or a mere capital contribution.

2.      If the automatic stay is lifted pursuant to this Order and upon the sale of any property that is the collateral of Eastland County, the City of Eastland, or Eastland ISD, proceeds of such sale shall first be applied to satisfy the full amount of taxes, penalties and interest due to these ad valorem tax jurisdictions, including estimated taxes for 2009, prior to the application of proceeds to the claims of HD.

3.      With respect to the cash collateral motions, the Court approves usage of cash collateral as requested in Debtors' Exhibit 1 up thru the earlier of: (a) termination of the stay if the adequate protection payments are not made; (b) the disclosure statement hearing; or (c) September 8, 2009.

4.      This is the ruling of the Court and the Court reserves the right to supplement this Order as appropriate.

HOU:2935893.1

5.    To the extent any conclusions of law are or contain findings of fact they shall be deemed to be findings of fact.

HOU:2935893.1